```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION

HARBOUR LIGHT TOWERS ASSOCIATION,
Inc.,

        Plaintiff,
v.                                Case No.: 8:10-cv-2183-T-33EAJ

AMERIFLOOD, LLC, WILLIS OF
FLORIDA, Inc., AMERICAN BANKERS
INSURANCE COMPANY OF FLORIDA,
RESOURCE PROPERTY MANAGEMENT,
Inc., and JEFF BAJZA,
Individually,

        Defendants.
_____/
```

**ORDER**

This cause is before the Court pursuant to Plaintiff Harbour Light Towers Association's Motion for Remand (Doc. # 11), filed on October 28, 2010. On November 24, 2010, Defendant American Bankers Insurance Company of Florida filed its Opposition to the Motion for Remand. (Doc. # 18). For the reasons that follow, the Motion for Remand is **GRANTED**.

**I.   Background and Procedural History**

Harbour Light Towers is a condominium association incorporated in Florida. (Doc. # 2 at ¶ 2). Harbour maintained a flood insurance policy with BB&T from 2002 until February 2008, with annual premiums of $7,000. (Id. at ¶ 9). Harbour was charged this low premium because its policy had been written under old flood underwriter rating guidelines. (Id.).

Harbour did not realize that it would lose its "grandfathered" status under the old guidelines if it changed flood insurance carriers. (Id. at ¶ 10).

In November 2007, Ameriflood and Willis promoted a Flood Insurance Rebate Program (FIRP) through Resource, Harbour's property management company. (Id. at ¶ 11). The FIRP proposal guaranteed to maintain Harbour's annual flood insurance premiums at around $7,000, with annual rebates of around $500. (Id. at ¶¶ 13-14). Harbour agreed to change flood insurance carriers based upon the proposal. (Id. at ¶ 13).

Harbour alleges that, during the transfer process, Resource, Ameriflood, Willis and Bajza learned that Harbour's flood insurance premiums would increase substantially if it changed carriers. (Id. at ¶ 14). These Defendants also became aware of the fact that Harbour did not have a Flood Elevation Certificate because of its "grandfathered" status; the lack of the Certificate would further increase Harbour's flood insurance premiums. (Id. at ¶ 18). These Defendants failed to inform Harbour that its premiums would increase to more than $43,000 under the new policy. (Id. at ¶¶ 15-18).

On or about February 25, 2008, Ameriflood and Willis accepted Harbour's premium payment of $7,054, (Id. at ¶ 19). Bajza, Ameriflood and Willis then submitted an incorrect flood

insurance application to Bankers. (Id. at ¶ 20). Bankers participates in the "Write Your Own" (WYO) policy program under the National Flood Insurance Program (NFIP). (Doc. # 1 at ¶¶ 5-6). Bankers is authorized to issue Standard Flood Insurance Policies (SFIPs) under the NFIP. (Id. at ¶ 6).

On or about February 27, 2008, Bajza, as an agent of Ameriflood and Willis, inspected and photographed Harbour's property and documented characteristics that would cause Harbour's premiums to increase substantially. (Doc. # 2 at ¶ 21). Bajza did not correct the flood insurance application, however, or inform Harbour of those characteristics. (Id. at ¶ 22). Resource, Ameriflood, Willis and Bajza did inform Bankers' underwriter of the characteristics, and Bankers promised to "push through" Harbour's policy under the old guidelines. (Id. at ¶¶ 23-24).

On or about April 7, 2008, Bankers issued a policy to Harbour with an annual premium of $7,054 in accordance with the FIRP proposal. (Id. at ¶ 25). On or about December 31, 2008, Bankers notified Harbour that its premium would increase to $43,782. (Id. at ¶ 28). On March 30, 2009, Bankers notified Harbour that its premium would be $43,852, an amount that Harbour continues to pay annually for flood insurance. (Id.).

3

Harbour filed suit in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida, on August 23, 2010. (Doc. # 2). Harbour asserts a claim of fraudulent inducement against Ameriflood, Willis and Bajza (Count I) for failing to inform Harbour that the proposed $7,054 annual flood insurance premiums would be impossible to obtain. (Id. at ¶ 33). Harbour further asserts claims of professional negligence against Ameriflood, Willis and Bajza (Count II) and Bankers (Count III) for failing to use reasonable skill and diligence in procuring flood insurance on behalf of Harbour. (Id. at ¶¶ 38-39, 44-45).

Harbour alleges that it depended upon Resource for advice concerning insurance, and that relationship imposed a fiduciary duty upon Resource. (Id. at ¶¶ 49-50). Harbour asserts a claim of breach of fiduciary duty against Resource (Count IV) for advising Harbour to accept the FIRP proposal and change flood insurance carriers, to Harbour's detriment. (Id. at ¶ 51). Finally, Harbour asserts a claim of vicarious liability against Ameriflood and Willis for the actions of their agent, Bajza (Count V). (Id. at ¶ 54-57).

On September 30, 2010, Bankers removed the case to this Court pursuant to 42 U.S.C. § 4072, 44 C.F.R. Pt. 61, App. A(3), Art. X and 28 U.S.C. §§ 1331 and 1337. (Doc. # 1). In

4

its Notice of Removal, Bankers explains that 42 U.S.C. § 4072 conveys exclusive jurisdiction over matters involving the administration and handling of a SFIP. (Id. at ¶ 15). Bankers further contends that state courts do not have concurrent jurisdiction. (Id. at ¶ 16). Although Harbour's complaint asserts only state-law causes of action, Bankers argues that those claims present a significant federal question because federal law must be interpreted and federal funds are at stake. (Id. at ¶ 21-23).

On October 28, 2010, Harbour filed its motion seeking remand pursuant to 28 U.S.C. § 1447(c). (Doc. # 11). Bankers filed its response in opposition to remand on November 24, 2010. (Doc. # 18). The Motion is ripe for the Court's review.

**II.  Legal Standard**

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal court if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A removing defendant bears the burden of proving proper federal jurisdiction. Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) (citations and quotations omitted).

"Federal courts are directed to construe removal statutes strictly, resolve all doubts about jurisdiction in favor of

5

Case 8:10-cv-02183-VMC-EAJ   Document 39   Filed 06/23/11   Page 6 of 16 PageID 276

remand, and employ a presumption in favor of remand to state courts." Total Fleet Solutions, Inc. v. Nat'l Crime Ins. Bureau, 612 F. Supp. 2d 1232, 1234 (M.D. Fla. 2009). Furthermore, a plaintiff's right to choose his forum carries more weight than a defendant's right to remove. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). A defendant's burden of proof is therefore a heavy one. Id.

Generally, the district courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he question of whether a claim arises under federal law must be determined by reference to the well-pleaded complaint." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986). The Supreme Court has explained that "[u]nder the longstanding well-pleaded complaint rule, . . . a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law." Vaden v. Discover Bank, 129 S. Ct. 1262, 1272 (2009) (internal citations omitted). That the defendant may rely upon a federal defense is insufficient. Aetna Health, Inc. v. Davila, 542 U.S. 200, 207 (2008).

However, removal is proper if "the complaint has been 'artfully pled' in order to avoid reference to any federal

6

law." <u>Southpointe Villas Homeowners Assoc., Inc. v. Scottish Ins. Agency</u>, 213 F. Supp. 2d 586, 590 (D.S.C. 2002). The district court may assume jurisdiction if a federal statute completely preempts the state-law cause of action, or if the state-law claim implicates a substantial question of federal law. <u>Id.</u>

III. **Analysis**

Harbour contends that this Court lacks federal jurisdiction because the complaint alleges only state-law tort claims related to policy procurement. (Doc. # 11). Harbour asserts that there is no need for the Court to interpret any law or regulation governing the NFIP, and that federal funds are not at stake because Harbour does not seek a refund of premiums paid. (<u>Id.</u> at ¶¶ 3-5). Specifically, Harbour argues that matters involving policy procurement are not preempted by federal law. (<u>Id.</u> at 5). Finally, Harbour contends that removal was improper because Bankers failed to obtain the consent of all other defendants under the so-called "rule of unanimity." (<u>Id.</u> at 12).

Bankers counters that federal funds are indeed at stake, and federal law must be analyzed. (Doc. # 18 at 3). Even if Harbour is not seeking reimbursement of premiums paid, the Arrangement between the Federal Emergency Management Agency

7

(FEMA) and WYO insurers stipulates that FEMA may reimburse expenses resulting from litigation arising under the scope of the Arrangement. (Id. at 10). FEMA alone determines what matters fall within the scope of the Arrangement. (Id.) Bankers further argues that matters related to policy procurement are preempted by federal law under current FEMA regulations. (Id. at 16). Finally, Bankers asserts that the consent of all defendants was not required for removal because of an exception to the unanimity requirement found at 28 U.S.C. § 1441(c). (Id. at 17).

### A. The National Flood Insurance Program

The National Flood Insurance Act (NFIA) of 1968 established the NFIP as a vehicle for providing property owners with affordable flood insurance subsidized by the federal government. 42 U.S.C. §§ 4001 et seq. In 1983, FEMA promulgated regulations enabling private insurers to provide flood insurance under the WYO program. 44 C.F.R. § 61.13(f). WYO insurers issue SFIPs, whose terms, rate structures and premium costs are regulated by FEMA. Southpointe Villas, 213 F. Supp. 2d at 588. WYO insurers deposit flood insurance premiums with the U.S. Treasury after deducting their fees and administrative costs, and draw on FEMA letters of credit when they lack sufficient funds to pay claims. Id. FEMA also

reimburses WYO insurers for certain defense costs related to claims handling and policy administration because they are fiscal agents of the United States. Id.

**B.    Exclusive Federal Jurisdiction**

The Fifth Circuit addressed the issue of federal jurisdiction over matters related to policy procurement in Campo v. Allstate Ins. Co., 562 F.3d 751 (5th Cir. 2009). The court found that federal law does not preempt state-law tort claims against a WYO insurer in connection with policy procurement. Id. at 758. In July 2009, FEMA issued a WYO Program Bulletin announcing its disagreement with Campo. Davis v. Nationwide Mut. Fire Ins. Co., 2011 WL 1792595 at *4 (E.D. Va. 2011). The Bulletin stated: "FEMA previously understood and intended its regulations to preempt state law claims related to policy formation, renewal, and administration arising from allegations of WYO Company error as distinct from agent error . . . ." Id. Courts have subsequently held that federal law preempts state-law claims with respect to policy procurement as well as policy interpretation and claims handling by a WYO insurer. Id.; Remund v. State Farm Fire & Cas. Co., 2010 WL 2025591 at *3 (D. Utah May 18, 2010).

Several principles support this conclusion. An agency's interpretation of its own regulations deserves substantial

9

deference unless it is plainly wrong or in violation of federal law. Stinson v. United States, 508 U.S. 36, 45 (1993). Principles of federal preemption also align with FEMA's position. Express preemption is suggested by 44 C.F.R. § 61.5(e) coupled with 42 U.S.C. § 4081(c). The regulation and statute "evidence an intent that WYO Carriers be shielded from liability for representations made by agents and brokers." Remund, 2010 WL 2025591 at *5.

Furthermore, federal funds may be at stake in procurement claims because FEMA may reimburse a WYO insurer for litigation expenses. Moffett v. Computer Sci. Corp., 457 F. Supp. 2d 571, 586 (D. Md. 2006). Although FEMA may refuse to reimburse a WYO insurer for actions significantly outside the scope of the WYO arrangement, the definition of what is outside the scope is left to FEMA's general counsel. Id. at 587. Furthermore, FEMA meant to provide WYO insurers with protections from state-law claims. Remund, 2010 WL 2025591 at *5. Thus, the Court finds state-law procurement claims are preempted as a matter of express and conflict preemption.

In this case, Harbour brought a state-law tort claim against Bankers, a WYO insurer, related to policy procurement. Because this claim is preempted by federal law, the Court may assume federal-question jurisdiction over this matter.

10

Southpointe Villas, 213 F. Supp. 2d at 590. However, this does not settle the question of exclusive federal jurisdiction over claims related to policy procurement. A Florida court has held that a federal court's "original, exclusive jurisdiction encompasses all claims relating to the provision of flood insurance under the NFIA." Siebels Bruce Ins. Cos. v. Deville Condominium Assoc., 786 So. 2d 616, 623 (Fla. 2d DCA 2001). Although at least one district court has disagreed with Siebels Bruce, that disagreement was based upon a distinction between claims handling and policy procurement. Houck v. State Farm Fire & Cas. Co., 194 F. Supp. 2d 452, 466-467 (D.S.C. 2002). Because such a distinction is no longer warranted, this Court is persuaded that exclusive federal jurisdiction exists in this matter. In any event, Siebels Bruce stands for the proposition that Florida state courts lack concurrent jurisdiction.

**C.   The Rule of Unanimity**

Nonetheless, the disposition of Harbour's Motion for Remand hinges upon the propriety of Bankers' unilateral removal of this case from state court. The rule of unanimity requires the consent of all defendants for removal to federal court. Smith v. Health Ctr. of Lake City, Inc., 252 F. Supp. 2d 1336, 1338 (M.D. Fla. 2003) (citing Russell Corp. v. Am.

11

Home Assur. Co., 264 F.3d 1040, 1049 (11th Cir. 2001). For removal to be effective, "each defendant must join in the removal by signing the notice of removal or by explicitly stating for itself its consent on the record." Nathe v. Pottenberg, 931 F. Supp. 822, 825 (M.D. Fla. 1995).

"If all defendants do not consent to removal, this constitutes a defect in removal procedure under 28 U.S.C. § 1447(c), making removal improper." Smith, 252 F. Supp. 2d at 1338-1339. "Like all rules governing removal, this unanimity requirement must be strictly interpreted and enforced because of the significant federalism concerns arising in the context of federal removal jurisdiction." Russell, 264 F.3d at 1040.

There are four exceptions to the rule of unanimity, only one of which applies in this case. Under 28 U.S.C. § 1441(c), unanimity is not required if the removed claim is "separate and independent" from one or more nonremovable claims.[1] A separate cause of action is not sufficient to invoke this exception. English v. Unum Life Ins. Co. of Am., 2010 WL 3269794 at *5, 6:10-cv-318-ORL-28-GJK (M.D. Fla. June 21,

---

[1] Other exceptions to the unanimity rule come into play if the nonjoining defendant had not been served with process at the time the notice of removal is filed, the nonjoining defendant is merely a nominal or formal party, or the removal is by the United States, any federal agency or a named federal officer.

12

2010) (citations omitted). "The United States Supreme Court has stated that 'where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).'" Id. (quoting Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 14 (1951)). Whether a separate and independent claim is involved is determined from the complaint. Finn, 341 U.S. at 14. Generally, claims arising from one "primary right" cannot be considered separate and independent. Id.

In support of its argument for a separate and independent claim, Bankers offers Super Stop #701 v. BP Prod. N. Am., Inc., 2008 WL 4861532 (S.D. Fla. Nov. 10, 2008). Super Stop filed claims against BP for violations of the Petroleum Marketing Practice Act and Florida's Deceptive and Unfair Trade Practices Act, and for wrongful termination of its Dealer Supply agreement; the claim against the co-defendant was for conversion. The court found that all of Super Stop's claims against BP fell under the Dealer Supply agreement, and that those claims were separate and independent from the claim for theft. Id. at *2.

The Court finds the facts in Super Stop to be inapposite to this case. While contract-related claims and conversion can

13

easily be categorized as separate "wrongs," the claims in this case cannot be segregated so neatly. Harbour alleges a chain of events in which Ameriflood and Willis solicited Harbour's flood insurance business, Ameriflood, Willis and Bajza submitted an incorrect flood insurance application, and Bankers pushed the application through in order to obtain a premium – at least temporarily – matching the proposal Harbour received. That result could not have been achieved without Bankers' complicity. The Defendants' actions worked in concert to effect a single alleged wrong, obtaining Harbour's flood insurance business without revealing that its premiums would increase dramatically.

The Court finds the other cases cited by Bankers to be equally unavailing.[2] Because there is no separate and independent claim at issue in Bankers' removal, the Court finds that the exception to the rule of unanimity does not

---

[2] In <u>Kimbrough v. City of Cocoa</u>, 2005 WL 1126651, 6:05-cv-471-ORL-31-KRS (M.D. Fla. May 5, 2005), the court found that the timeline of events demarcated three distinct sets of claims under § 1983, negligence and malpractice against three sets of defendants. As with <u>Super Stop</u>, the separate and independent claims were easily categorized. The remaining cases cited by Bankers appear to follow the so-called "refined approach" to the rule of unanimity that considers any federal claim to be separate and independent from state claims. The refined approach has been rejected by most courts. <u>See</u> <u>Shepard v. City of Philadelphia</u>, 2001 WL 92300 (E.D. Pa. 2001) (surveying cases rejecting the refined approach).

14

apply. Therefore, removal was procedurally improper because Bankers did not obtain the consent of all defendants.

Few courts have addressed the issue of exclusive federal jurisdiction coupled with defective removal, but a majority of those have favored remand. A court in the Middle District of Florida spoke on the matter in Bradwell v. Silk Greenhouse, Inc., 828 F. Supp. 940 (M.D. Fla. 1993). The Bradwell court held that "removal is permitted only if the statutory requirements have been satisfied and the fact that the Court might have exclusive jurisdiction does not dispense with the necessity of complying with the statutory requirements." Id. at 944. Other courts have agreed. See Malone v. Malone, 2007 WL 789449 at *5 (D. Or. 2007); Viala v. Owens-Corning Fiberglass Corp., 1994 WL 139287 at *3 n.3 (N.D. Cal. 1994). A defendant believing that the state court has no jurisdiction over the matter may bring whatever motions it deems appropriate in the state court proceeding. Viala, 1994 WL 139287 at *3 n.3.

The Court is persuaded by these arguments. Therefore, the Court finds that although there is exclusive federal jurisdiction over Harbour's claim against Bankers, removal was defective under the rule of unanimity and remand is proper.

15

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1. Plaintiff's Motion to Remand (Doc. # 11) is **GRANTED**.

2. The Clerk is directed to **REMAND** this case to the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 23rd day of June 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record